HEARD NOVEMBER TERM, 1877.

## TRIMMIER vs. THOMSON.

A joint action upon a joint and several bond, given by two obligors, may be maintained against the surviving obligor and the executors of the deceased obligor.

Where the nature of the case so demands, separate judgments may be entered against several defendants; as, for instance, where the action is against a surviving obligor and the executors of a deceased obligor, and the verdict is a general one for so much money, separate judgments may be entered against the defendants.

The personal goods and effects of a decedent vest in his personal representative from the moment of his death, and he, whether he be executor or administrator, is the proper and only party to sue for and collect the choses in action of the estate, and it makes no difference that he has an interest in the chose sued on by assignment from a legatee.

Where the owner of slaves conveyed them to another. reserving a life estate, the relation thereby created between him and the other was not that arising from bailment, but he simply remained owner of a life estate in the slaves, with power to sell and dispose of such estate as he pleased.

Where one having a life estate in slaves transfers such estate to another, the contract between them is one of sale and not of letting to hire.

A covenant to protect vendee of the covenantor in the possession of the slaves purchased during his natural life was not broken by the emancipation of the slaves before his death.

Where matter is alleged in an answer which might have been, but was not, set up as a counter claim, and there is no prayer for judgment thereon, it must for all the purposes of pleading be taken as a mere defense and not as a counter claim.

Implied warranty of soundness is not excluded by an express warranty of title.

Where in an action for the purchase money of a chattel the defense is unsoundness, if defendant has not returned or offered to return the chattel, he must pay what it was worth.

A receipt for a smaller sum than that apparently due, expressed to be in full, must be taken as true until the contrary is proved.

BEFORE NORTHROP, J., AT SPARTANBURG, MARCH, 1877.

This was an action by F. M. Trimmier as administrator with the will annexed of Peyton Simmons, deceased, against T. O. P. Vernon; and also against H. H. Thomson and J. S. R. Thomson, as surviving executors of H. H. Thomson, deceased.

To understand the opinion of the Court, it is necessary to publish the brief, as agreed upon by counsel, and which is as follows:

An action was commenced in the Court of Common Pleas on the 9th of June, 1874, by F. M. Trimmier, administrator with the will annexed of Peyton Simmons, deceased, against T. O. P. Vernon and H. H. Thomson and J. S. R. Thomson, as surviving executors of H. H. Thomson, deceased, defendants. The complaint alleged that T. O. P. Vernon and H. H. Thomson, Sr., had executed and delivered to Peyton Simmons a bond, a copy of which was attached. That Peyton Simmons died on 3d of June, 1871, leaving a will, and

that plaintiff was thereafter duly appointed administrator with the will annexed of said testator's estate; that H. H. Thomson, Sr., died, leaving a will, appointing Mrs. Mildred E. Thomson, J. Waddy Thomson, H. H. Thomson and J. S. R. Thomson executors; that said executors all qualified, and that afterwards Mrs. Mildred E. Thomson and J. Waddy Thomson died. The complaint demanded judgment against the defendants for thirty-six hundred and six dollars and ninety-seven cents, with interest from 20th of June, 1874.

The bond is as follows:

"For and in consideration of the sale, transfer and delivery by Peyton Simmons of all his right, title, claim and interest in the following negroes, to wit: Beck, Chany, Josephus, Susanna, Nutty, Isaac, Henry, Vina, Harriet, Cloe, George, Caroline and their increase, and also all his right, title, claim and interest in the following negro slaves, to wit: Elleck, Dick and Myra, and their increase, now in the actual possession of James W. Cooper and Jesse Cooper, to Thomas O. P. Vernon, of Spartanburg District, his heirs, executors, administrators or assigns, during the natural life of the said Peyton Simmons, all which will more fully appear by reference to the deed of the said Peyton Simmons, executed 7th of June, 1855, we do hereby bind ourselves, and each of us jointly and severally, our heirs, executors, administrators and assigns, firmly by these presents, to pay to the said Peyton Simmons, during his natural life, or while I, my heirs, executors, administrators, or assigns shall not have the possession of the said negroes so delivered taken from me, my heirs, executors, administrators or assigns, by any person or persons by suit at law or equity, claiming under the said Peyton Simmons, the sum of two hundred dollars per annum during the natural life of the said Peyton Simmons, and also the costs of the suit at equity just terminated between James W. Cooper and others, complainants against the said Peyton Simmons; and also to save him harmless from anything arising out of said suit. Witness our hands and seals this June 9th, 1855.

"T. O. P. VERNON,   [SEAL.]
"H. H. THOMSON,   [SEAL.]

"Test:
"A. W. BIVINGS.
"R. D. BELUE."

Endorsements on bond :

" June 10, 1856. Rec'd of T. O. P. Vernon one hundred and thirty-five dollars on this bond in part payment of the two hundred dollars now due.

"P. SIMMONS."

" Rec'd, July 18, 1856, of Thomas O. P. Vernon, sixty-five dollars in full of principal, and thirty-seven cents in full of interest of first installment now due according to the within agreement.

his
"PATON ⋈ SIMMONS.
mark.

"Test:
"J. M. BOWDEN."

" Rec'd, October 9, 1857, of T. O. P. Vernon, fifty dollars and ninety-seven cents on this bond.

" Rec'd, June 11, 1859, of T. O. P. Vernon, seventy dollars in part of amount for the year ending 1st June, 1859, and beginning with 1st June, 1858.

" Rec'd, June 15, 1857, of T. O. P. Vernon, one hundred dollars on this bond.

" Rec'd, December 14, 1857, of T. O. P. Vernon, fifty-one dollars and ninety cents on this bond.

" Rec'd of H. H. Thomson's estate, by J. M. Elford, seventy dollars and sixty cents, in part of third annuity, due on this bond.

" Rec'd, November 5, 1858, of T. O. P. Vernon, one hundred and thirty dollars on this bond.

" Rec'd, October 14, 1859, of T. O. P. Vernon, fifty dollars in part of instalment now due on this bond.

"P. SIMMONS."

" Rec'd fifty dollars in full of installment due 9th June, 1859."

" Cr. by seventy-four dollars paid Mr. Simmons, July 2, 1860, by."

" Rec'd 22 Feb'y, 1861, thirty-five dollars, the amount due by the estate of H. H. Thomson, dec'd, from Waddy Thomson, Ex'or, including in't from 8th June, 1860, and paid same to Peyton Simmons April 2, 1861."

"J. D. WRIGHT, Att'y."

"Nov. 3, 1859. Rec'd of the Ex'ors of H. H. Thomson, dec'd, thirty-four dollars and twenty-nine cents, their portion of the annuity above named prin. and in't from the first day of June last.

"P. SIMMONS.

"Test: R. C. POOLE."

The defendants, in their answer, admitted the allegations of the complaint, but submitted to the Court that the plaintiff should not maintain his action because he had joined in the same action as joint defendants the living obligor, T. O. P. Vernon, and the surviving executors of the deceased co-obligor, H. H. Thomson.

The answer then alleged that the said bond belonged, under the will of Peyton Simmons, to Clarissa Simmons and her assigns; that the plaintiff had recognized the right of Clarissa Simmons to the control and possession thereof, and that the plaintiff had given to her his individual bond in the sum of seven hundred dollars, conditioned to pay her an annuity of one hundred dollars, and that, in consideration thereof, she had assigned said bond to him, and that he held said bond in his own right.

The answer further alleged that after the execution and delivery of the bond sued upon the obligors made an agreement with Jesse Cooper and James W. Cooper whereby one third part of the amounts to be paid on said bond was assured to be paid by Jesse Cooper, another third by James W. Cooper, one-sixth part by T. O. P. Vernon, and one-sixth part by the testator of the defendants, H. H. Thomson and J. S. R. Thomson; that Peyton Simmons was a party to said agreement, and consented thereto, and that there was an endorsement on said bond showing what amount each of said persons was to pay.

That the annuities due upon said bond were paid to the 9th of June, 1864.

That there was failure of consideration in that said bond was given wholly for the use of the slaves mentioned in the bond during the lifetime of Peyton Simmons, and that certain of said slaves, to wit, George, Caroline, Nutty, Chaney and Elleck, were unsound, and that the damage which resulted to defendants therefrom amounted to two hundred dollars per annum.

That at the time the bond was given Peyton Simmons covenanted to protect and defend his vendee, T. O. P. Vernon, in pos-

session of said slaves during his life, and that on his failure to do so the aforesaid bond for annuity should become null and void, and that in April, 1865, said covenant was wholly broken and the bond thereby became null and void.

That by the failure of Peyton Simmons to perform his covenant after April, 1865, the defendants were damaged to a greater amount than the annual installments of the bond.

That Peyton Simmons, on the 29th of April, 1829, bargained and sold to James W. Cooper, Jesse Cooper and Thomas Cooper, and their heirs and assigns, certain negro slaves, reserving, however, the possession, use and benefit of the same during his own life and the life of his wife Susanna, (who afterwards died,) and covenanted that after his death said negro slaves and their increase should be equally divided between the said Coopers; that said Coopers, on the 7th of May, 1838, consented to the sale of certain of said slaves, in consideration whereof certain other slaves were conveyed to them under the same terms and conditions and with like covenants as had been made in the first deed; that the slaves mentioned in the bond sued upon were all included in the two aforesaid deeds made by Simmons to the Coopers; that in 1855 the testator, H. H. Thomson, bought the interest of the Coopers in certain of said slaves, to wit, Chaney, Josephus, Susanna and Isaac, and was thereby entitled to the rights of the Coopers as to said slaves, and that the failure or inability of the plaintiff or his testator to carry out the covenants of said deeds damaged the estate of H. H. Thomson four thousand dollars; that T. O. P. Vernon bought likewise the interest of the Coopers in certain other of the said slaves, to wit, George and Caroline and child, and that by like failure of Peyton Simmons and his administrator to perform the covenants of said deeds said T. O. P. Vernon was damaged two thousand dollars; that Jesse Cooper, James W. Cooper and Thomas Cooper were damaged by like failure to perform the covenants of said deeds twelve thousand dollars.

The appellants also pleaded *plene administravit.*

The plaintiff in his reply alleged:

First. That plaintiff had no knowledge of the bond referred to in the answer; and that if there was such a bond executed by his testator, that the covenants therein had been performed by said testator.

Second. That the plaintiff admitted that the deeds were executed as alleged, but denied that any of the covenants therein were broken.

Third. Plaintiff denied that the Coopers were damaged by the failure of plaintiff's testator to perform the covenants contained in said deeds.

The amended answer of the defendants alleged that the slaves, Elleck and George, died about 1857, and that the services of same were worth one hundred and fifty dollars per annum, and that that amount should also have been credited on the bond now sued upon, if the annuity was payable at all, and that the remainder of said slaves were emancipated under the proclamation of the President in 1863 and by the action of the military authorities in April, 1865.

The case was placed on Calendar No. 1, and called at the March Term of Court, 1877. A motion (of which due notice had been given) was made to dismiss the complaint, on the ground that the plaintiff had improperly joined as defendants in the same complaint the obligor, T. O. P. Vernon, and the surviving executors of the deceased obligor, H. H. Thomson; also a motion to compel plaintiff to amend so as to allow the action against one defendant only; also to compel plaintiff to proceed separately in his action against T. O. P. Vernon and the appellants, all of which motions were refused by the presiding Judge and exceptions taken.

A jury having been sworn in the case, the Court ruled that the defendants, having admitted the allegations of the complaint, were entitled to the opening and reply.

The defendants then put in evidence the following paper, to wit:

"STATE OF SOUTH CAROLINA, }
    " Spartanburg District.    }

"Know all men by these presents, that I, Peyton Simmons, for and in consideration that T. O. P. Vernon hath this day agreed to pay off and discharge all the tax costs with which I am now or hereafter may be chargeable in the case of James W. Cooper and others against me tried and disposed of at this June Term of the Court of Equity for said District, and hath agreed also to relieve, release, dispense with and protect me against and from all orders and decrees of the said Court of Equity for said District in the said case of Cooper and others against me, and in consideration also of

an annuity of the sum of two hundred dollars, secured to be paid to me by the said T. O. P. Vernon for and during the term of my natural life, said annuity dating and beginning on the day when I shall hereafter deliver into the possession of the said T. O. P. Vernon the sixteen negro slaves hereinafter mentioned and named, have this day sold, bargained, conveyed and made over and transferred, and do by these presents sell, bargain, convey, make over and transfer all the following named negro slaves, to wit: Beck, Chany, Josephus, Susanna, Nutty, Isaac, Henry, Vina, Harriett, Cloe, George, Caroline, Alice, Dick and Myra, with all their increase; that is to say, all my right, title and claim to the said negro slaves, said right, title and claim being and during the term of my natural life; and said negro slaves being the same heretofore conveyed by me to James W. Cooper, Jesse Cooper and Thomas Cooper in several deeds, in which several deeds the said life estate conveyed as above to said Vernon was reserved; and do hereby bind myself, my heirs, administrators and executors, to protect and defend the said Vernon, his heirs, executors and administrators, in the possession of the said negro slaves, during my life as aforesaid, against the demands and claims of any and all persons setting up title thereto, and especially against the title or claim of any person or persons claiming the said negro slaves under any title, deed or bill of sale heretofore executed by me, hereby declaring null and void the bond securing the annuity aforesaid if the said negro slaves shall hereafter be recovered and taken from the possession of the said Thomas O. P. Vernon, or from the possession of his heirs, executors or administrators whilst I live, in suit at law or equity herein ; having it understood that I am not to deliver into the actual possession of the said Thomas O. P. Vernon the three negro slaves, Elleck and Dick, now in the possession of Jesse Cooper, and Mira, now in the possession of James W. Cooper, meaning hereby simply to convey my right and title to the said three negro slaves.

"In witness whereof I have hereunto set my hand and seal this the 7th day of June, A. D. one thousand eight hundred and fifty-five.

"PEYTON SIMMONS, [L. S.]

"Signed, sealed and delivered in presence of
 "H. H. Thomson.
 "J. V. Trimmier."

The defendants also put in evidence the bond sued upon in this action. On said bond, and a short distance below the signatures, appears the following endorsement, written in ink, and in hand-writing of J. D. Wright, to wit:

Jesse Cooper, one-third.

H. H. Thomson, portion one-half of one third.

T. O. P. Vernon, the same.

James Cooper, one-third.

Hon. T. O. P. Vernon then testified that he and H. H. Thomson signed the bond; that the latter was a surety and died in February, 1858. On cross-examination witness said he thinks H. H. Thomson, at date of bond, had equal interest with himself in the negroes. [Question was here asked whether any, and, if so, what, arrangement was ever entered into between the said obligors and Peyton Simmons as to other persons assuming a portion of the liabilities of the bond. Question was objected to by the plaintiff, and objection sustained by the Court.] Witness further testified that the slaves, at the time of the trade, he supposed were sound. Plaintiff objected to the intro-duction of any testimony as to the unsoundness of the slaves. Objection overruled by the Court and exceptions taken. Witness then testified that the price agreed to be paid for the use of the slaves was a good price for the use of sound slaves; that witness himself paid most of the annuities, which were paid without objec-tion or complaint on his part, and that he never heard that any complaint of unsoundness of the slaves was made by any of the parties concerned until after this suit was commenced; that no offer to return the slaves to plaintiff's testator had ever been made; that H. H. Thomson subsequently purchased one-half of interest of wit-ness in said slaves; that witness and H. H. Thomson subsequently entered into an arrangement by which H. H. Thomson obtained the titles of the Coopers to the negro women, Chany and her children, Josephus and Susanna, and to Isaac; and witness obtained the Coopers' titles to the slaves George and Caroline and child; that George died very shortly after he was brought home sick, from a fever contracted while at Peyton Simmons's. The Coopers were to pay two-thirds of the annuities to Peyton Simmons under an agree-ment made between said Coopers and witness and H. H. Thomson; and witness was to pay one-sixth of the annuities, and H. H. Thom-son was to pay also a sixth. The negroes obtained from Simmons were the same negroes whom Simmons had formerly deeded to the

Coopers, reserving to himself the use for his life. Witness was here asked as to condition of slave Beck at time of sale, and whether he and H. H. Thomson had to incur any expense in providing for her. [This question was objected to. Objection sustained and exception taken.]

Defendants offered in evidence the following papers, to the admissibility of which the plaintiff objected. Objection overruled and exceptions taken. Proved by Judge Vernon, to wit:

"One day after date I promise to pay M. C. Barnett, administrator of the estate of J. W. Cooper, deceased, or bearer, sixty-six dollars and seventy cents, for value received.

"Given under my hand and seal this 19th June, 1863.
                              "PEYTON SIMMONS."      [L. S.]

"One day after date I promise to pay M. C. Barnett, administrator of the estate of J. W. Cooper, deceased, or bearer, one hundred and forty-three dollars and twenty-one cents, for value received.

"Given under my hand and seal this December 26th, 1862.
                              "PEYTON SIMMONS."      [L. S.]

"One day after date I promise to pay M. C. Barnett, administrator of the estate of J. W. Cooper, deceased, sixty-six dollars and sixty-six cents, for value received.

"Given under my hand and seal, July 4th, 1864.
                              "PEYTON SIMMONS."

Judge Vernon further testified that M. C. Barnett was dead.

The testimony of witnesses taken before the Clerk of the Court was then introduced.

Mrs. White testified as to the unsoundness of several of the negroes, to which testimony the plaintiff objected. [Objection overruled and exceptions taken.] That money was paid by the Coopers on the bond up to the freeing of the slaves; she never saw any of said money paid; that she had seen receipts signed by Simmons, some of which state that they were given for the hire of the negroes and some for the annuities on account of the negroes; that at the time Simmons parted with the possession of the slaves their ages were as follows: Myra, sixteen years; Dick, an infant; Elleck, thirty years; Caroline, twenty-five years; George, thirty years, and Cloe, eighteen years; Harriet, Vina, Henry, Isaac, Susanna and

Josephus were babies at that time; Chany, thirty-five or forty years old; Beck, very old and worthless.

Several witnesses were then introduced to prove the value of the hire of a lot of negroes such as is above described, to all of which testimony the plaintiff objected. [The objection was overruled and exceptions taken.] Said witnesses then testified that the hire of such a lot of slaves would be worth but little, if anything, more than their board and clothing; that two hundred dollars would be more than they were worth at that time; that the hire of a man was worth about one hundred dollars per annum, and of a woman about fifty dollars. The price of slaves at that time was as follows: A man from eight hundred to one thousand, a woman from five to seven hundred dollars, a child from two to five hundred dollars; that they did not know the negroes in controversy; that the natural increase of negro women and the growth of negro children paid a good interest on investments in such property; that whilst the hire of the negroes, described as said negroes were at the time of the transfer, was worth very little, it would become more and more valuable with the growth of the children.

The defendants then put in evidence the record from Probate Court of estate of Peyton Simmons, deceased. The will gave to the testator's wife, Clarissa Simmons, all of his estate after the payment of his debts, to be entirely subject to her control and disposal immediately after his death, and constituted her the sole executrix of the will, but she did not qualify as executrix. The administration bond given by plaintiff as administrator with the will annexed was in the sum of one thousand dollars. The letters of administration are dated 28th March, 1874.

The defendants then had the plaintiff sworn. He stated that he was Clerk of the Court; that he had bought the interest of Mrs. Clarissa Simmons in the bond on 14th November, 1873, before the probate of Peyton Simmons's will, and that then Mrs. Simmons had assigned her interest in the bond to him; he gave Mrs. Simmons therefor his own bond for $700, conditioned to pay her an annuity during her life of one hundred dollars. He then applied for letters of administration and brought this suit. No debts have been proved against the estate. The bond sued upon is his individual property, after the payment of the debts of the testator and the expenses of administration; that this bond is about all the estate; that suit was brought on this bond in 1867 by Peyton Simmons;

that the suit abated by the death of said Simmons.   The record of said suit was produced by witness.

The defendants thereupon rested.   The plaintiff announced that he had no testimony to offer, and claimed that he was entitled thereby to the reply in the argument before the jury.   The Court so ruled, to which ruling the defendants excepted.

After argument the defendants submitted to the Court a written request to charge the jury as follows:

I. That if the jury, from the evidence, believed that the bond sued on is the individual property of F. M. Trimmier, then that the plaintiff could not recover in this action.

II. That under the deed from Simmons to the Coopers, and the decree of the Court of Equity, Simmons's administrator was bound after Simmons's death to deliver the slaves therein mentioned who might be alive, and their increase, to the Coopers or their assigns, or, in case that could not be done, to account for the value thereof.

III. That if the defendant, T. O. P. Vernon, or the testator of the other defendants acquired the right of the Coopers to any of said slaves, and Simmons's administrator failed or was unable to deliver said slaves to the defendants, the defendants have the right to put in their counter claim for the value of said slaves not delivered as aforesaid.

IV. That a contract to furnish the services of a slave for a number of years is not a sale of the slave.

V. That such a contract amounts in law to a hiring only.

VI. That in cases of hiring, when the services of the slave are lost without fault of the hirer, either by death or by emancipation under the Act of Congress, the person hiring should only account for the time he had such services.

VII. That the allegations of unsoundness of slaves as set forth in paragraph 8 of defendant's answer not being denied in the reply of plaintiff, the jury should consider said allegations as true.

All of which requests to charge were refused, and His Honor charged the jury that the plaintiff could, as administrator, sue upon the bond; that the transfer of the slaves by Simmons to Vernon was not a hiring but a sale; that the emancipation of the slaves did not effect plaintiff's right of recovery in this action, and that the emancipation of the slaves relieved Peyton Simmons's estate from any

liability for the non-delivery of said slaves to the Coopers or their assigns.

To all of which charges and refusals to charge the defendants excepted.

The plaintiff then submitted to the Court a written request to charge as follows:

I. That the writing on the margin of the bond sued on is not evidence that the plaintiff's testator released either of the obligors to said bond from the payment of any part of said bond.

II. That the agreement between T. O. P. Vernon, H. H. Thomson and the Coopers to divide between themselves the payment of the annuities on said bond was not binding on plaintiff's testator.

III. That the obligors could not be released from their obligation except by deed or by parol for valuable consideration, and in the latter case the consideration must be proved.

IV. That a written warranty of title alone excludes the warranty of soundness usually implied from a sound price.

V. That the retention of the slaves for ten years without complaint or offer to return them to vendor and the payment of the annuities for six years estops the vendees from pleading failure of consideration.

All of which requests to charge were refused, and His Honor charged that the writing on the margin of the bond might be taken by the jury as evidence that plaintiff's testator may have entered into an agreement to release the obligors from the payment of a part of their obligation; that a written warranty of title does not necessarily exclude an implied warranty of soundness; that there was no law which would prevent the jury from considering the unsoundness of the slaves if they thought any had been proven; and that they could make such abatement of the principal and interest of the bond as they might conclude the testimony authorized.

To all of which charges and refusals to charge the plaintiff excepted.

The jury then brought in a verdict against the defendants for three thousand dollars.

The defendants then made a motion for a new trial on the ground that the verdict was contrary to the plain and uncontradicted evidence, and especially of the evidence relating to the share that each obligor of said bond had to pay. Said motion was also refused by the Court.

The plaintiff, thereafter, on the        day of April, 1877, entered up two separate judgments herein, making two separate judgment rolls: The first against T. O. P. Vernon for three thousand dollars, with interest from 20th March, 1877, and one hundred and fifty-six dollars and fifty cents costs, and the other against H. H. Thomson and J. S. R. Thomson, as surviving executors of H. H. Thomson, deceased, for a like sum of debt and interest, and for one hundred and fifty-six dollars and twenty-five cents costs.

From which said last mentioned judgment, and from the rulings and charges and refusals to charge as above set forth, the defendants, H. H. Thomson and J. S. R. Thomson, as surviving executors of the last will and testament of H. H. Thomson, deceased, appealed to this Court to reverse said rulings, and to set aside the verdict and judgment herein, and to dismiss said complaint, or, failing in that, to grant a new trial on the grounds that His Honor the presiding Judge erred :

I. In refusing to dismiss the complaint herein.

II. In refusing to compel the plaintiffs to amend so as to allow the action against one defendant only.

III. In refusing to compel plaintiff to bring separate actions against defendants.

IV. In refusing to allow T. O. P. Vernon to testify as to the condition of the slave Beck, and as to the expense incurred in providing for said slave.

V. In refusing to allow defendants the reply in argument before the jury.

VI. In refusing to charge the jury that if they believed that the bond sued on was the individual property of F. M. Trimmier, then that the plaintiff should not recover in the action.

VII. In refusing to charge the jury that if the defendant, T. O. P. Vernon, or the testator of the other defendants acquired the right of the Coopers to any of said slaves, and Simmons's administrator failed or was unable to deliver said slaves to the defendants, the defendants had the right to put in their counter claim for the value of said slaves not delivered as aforesaid.

VIII. In refusing to charge that a contract to furnish the services of a slave for a number of years is not a sale of the slave.

IX. In refusing to charge the jury that such a contract amounts in law to a hiring only.

X. In refusing to charge the jury that in cases of hiring, when the services of the slave were lost without fault of the hirer, either by death or by emancipation under the Act of Congress, the person hiring should only account for the time he had such services.

XI. In refusing to charge the jury that the allegations of unsoundness of the slaves, as set forth in defendants' answer, not being denied in the reply of the plaintiff, the jury should consider said allegations as true.

XII. In charging the jury that the plaintiff, as administrator, could sue upon the bond.

XIII. In charging the jury that the transfer of the slaves by Peyton Simmons to T. O. P. Vernon was a sale and not a hiring, and that the fact that the slaves were emancipated did not give the defendants any right to a counter claim or set-off by reason of thereby losing the services of said slaves.

XIV. In charging the jury that the emancipation of the slaves relieved Peyton Simmons's estate from any liability for the non-delivery of any of said slaves, after Peyton Simmons's death, to the Coopers or their assigns.

XV. In refusing to grant a new trial.

And said defendants do appeal from said judgment on the further ground—

XVI. Because the plaintiff having sued in a joint action T. O. P. Vernon and these appellants, and having obtained a single verdict in said joint action, has, without authority of law, entered up two separate judgments, each for the full amount of said verdict and costs—one against T. O. P. Vernon and the other against these appellants, as executors aforesaid.

The plaintiff also gave notice of appeal, and asked that this Court reverse the rulings of His Honor the presiding Judge, to which exceptions were taken by the plaintiff, and that a new trial be granted upon the grounds that His Honor erred:

I. In allowing testimony as to the soundness of the slaves.

II. In allowing testimony as to the value of the hire of the slaves, where the bond sued on shows that the slaves were not hired, but purchased by one of these defendants.

III. In admitting three notes given by plaintiff's intestate to M. C. Barnett, administrator of J. W. Cooper, as evidence of payment by said Cooper on the bond of defendants.

IV. In refusing to charge the jury :

1. That the writing on the margin of the bond sued on is not evidence that he released either of the obligors to said bond from the payment of any part of said bond.

2. That the agreement between T. O. P. Vernon, H. H. Thomson and the Coopers to divide between themselves the payment of the annuities on said bond was not binding on plaintiff's testator.

3. That the obligors could not be released from their obligation except by deed, or by parol for valuable consideration, and in the latter case the consideration must be proved.

4. That a written warranty of title alone excludes the warranty of soundness usually implied from a sound price.

5. That the retention of the slaves for ten years without complaint or offer to return them to vendor, and the payment of the annuities for six years, estops the vendees from pleading failure of consideration.

*J. S. R. Thomson*, for defendants.

*Evins & Bomar*, of counsel.

*Bobo & Carlisle*, contra.

September 14, 1878.   The opinion of the Court was delivered by

HASKELL, A. J.   The action is upon a joint and several sealed instrument for the payment of an annuity to Peyton Simmons by T. O. P. Vernon and H. H. Thomson.   The plaintiff is the administrator of the goods and effects of the obligee.   The defendants are one of the original obligors and the surviving executors of the other.   The latter and the plaintiff both appeal.   The exceptions which constitute the grounds of appeal are numerous, but may be to some extent classified, and will be considered in the order of the questions to which they respectively pertain.

The first three and the sixteenth grounds of appeal, on the part of the defendants, relate to the first point made in the defendants' answer—" That the plaintiff should not maintain his action because he had joined in the same action as joint defendants the living obligor, T. O. P. Vernon, and the surviving executors of the deceased co-obligor, H. H. Thomson;"—and to the further point that the plaintiff had entered up several judgments upon a single verdict.   It is not disputed that the executor of a deceased co-obligor

of a joint and several bond may be sued by the obligee.   The question is, can the executor be sued together with the surviving obligor in the same action as the deceased co-obligor might have been in his lifetime?   Under the former practice in this State, on the decease of one of joint debtors the remedy was by action at law against the survivor, and, further, by a proceeding in equity by which representatives of the deceased were brought in and the estate made liable.   The same was the rule in case of an obligation which was both joint and several, with the additional power on the part of the creditor to bring a separate action at law against the representatives of the deceased as well as against the survivor.   The reason why the action at law could not be brought jointly against the survivor and the representatives of the deceased is thus stated in *Ayer* vs. *Administrator of Buford*, (2 Mill., 319): "Because the *same* judgment cannot be rendered against both.   The judgment against the survivor would be *de bonis propriis*, and that against the representatives of the joint contractor *de bonis testatoris.*"   See also Chit. Plead., 50.

The question now is, whether the practice as thus established has been changed by the Code of Procedure, which was designed "to revise, simplify and abridge the rules, practice, pleadings and forms of the Court," and "that justice may be administered in a uniform mode of pleading without distinction between law and equity."— Const., Art. V, § 3.

The rule of pleading and practice in cases on contracts joint and several, as above stated, was purely technical, arising, not from the nature of the contract which was the cause of action, but from the inflexibility of the forms of proceedings in the Courts of law, which forced recourse to the Court of Equity.   It thus presents one of those instances which the Code was designed to rectify, and we think that it has done so.   "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein."—§ 141.

"Persons severally liable upon the same obligation or instrument *    *    *    *    *    may all, or any of them, be included in the same action at the option of the plaintiff."—§ 143.

As to the liability of the appellants, defendants, in their representative character, had the action been brought against them alone, there can be no doubt; and the fact that their testator was jointly

as well as severally liable cannot exclude them from the provisions of this Section, and they are manifestly within the scope of Sections 141 and 143. The Court is aware that there has been conflict of decision in other States upon this point; but, with all deference to the learning and ability of the opinions from which this Court derives aid in construing a new form of procedure, nevertheless they are not of authority, and in this instance the words and the intention of the Legislature are so entirely in harmony with each other that the Court experiences little difficulty in arriving at a conclusion.—Pomeroy on Rem., 354, § 304.

"The only pleading on the part of the defendant is either a demurrer or an answer."—§ 166 Rev. Stat., p. 605.

It is further provided in Section 167 what shall be grounds of demurrer: 1. To the jurisdiction. 2. To the legal capacity of the plaintiff to sue. 3. That there is another action pending, &c. 4. That there is a *defect* of parties. 5. That several causes of action have been improperly united. Certainly neither of the first four touches the present case, nor does the fifth, for there is but one "cause of action," and the question arises on the joinder of several parties on this single cause.

The last (6) ground of demurrer is "that the complaint does not state facts sufficient to constitute a cause of action." But it is unquestionable that upon a joint and several contract, as this is, the obligee has a right of action against the executors of a deceased obligor. Every case of misjoinder of parties is covered by the sixth subdivision of Section 167; and if there be in the complaint a cause of action against the party and it be not prevented upon one or the other grounds of demurrer, the case must go to trial. Thus circuity and multiplicity of action are prevented by dispensing with the necessity of proceeding by distinct suit in equity or by a separate action at law. This disposes of the question, but it is proper to notice that if the answer of Vernon and the Thomsons was joint, as would be inferred from the brief, it is certain that the defendant, Vernon, had no ground for demurrer, and it is, to say the least, questionable whether the demurrer could have been sustained for either, when jointly made, unless it was good for both. The question of the two separate judgments upon a single verdict still remains, and upon this the statute may not be so clear; but upon reflection the Court has arrived at the conclusion that such is the proper mode. In his commentaries upon the subject, now being

considered, Mr. Pomeroy (p. 354, § 304; p. 446, § 407,) deems it hardly necessary to argue to show that the separate judgments must be entered up against the several defendants when the nature of the case so demands. In the cases cited by him (*Burgoyne* vs. *Ohio L. J. & T. Co.*, 5 Ohio, 586; *Churchill* vs. *Trapp*, 3 Abb. Pr., 306; *Eaton* vs. *Elger*, 47 N. Y.,) it is held that whenever it is determined that the executor of the deceased co-obligor can be joined with the survivor in an action the judgments should be separate, one against the survivor *de bonis propriis* and the other against the representative of the deceased *de bonis testatoris*. And, further, it is held that this is not only a logical sequence of the preceding provision, but that it is clearly comprehended within the permissive provisions relating to judgments themselves.—§ 298 Rev. Stat., p. 639. And in these decisions we concur.

In the language of Dixon, C. J., in *Decker* vs. *Trilling*, (24 Win., 610,) cited by Mr. Pomeroy, it seems clear "that the judgment should follow the nature of the claim established; and if that is separate and several, as against each defendant, then the judgment should be so." The verdict finds the fact and the Court adjudges accordingly. No practical difficulty arises in forming the judgment roll where (under Section 298) there may be several judgments, some for certain of the defendants, and another or others for plaintiff, &c., for in Section 305, which prescribes what shall constitute the judgment roll, it is expressly provided that it shall be the "pleadings or *copies* thereof and a copy of the judgment." Thus, for each of the separate judgments, a copy of the pleading would be attached.

But even if the Court had arrived at an opposite conclusion on this point, the judgment would not be severed, but amendment would have been ordered under Sections 197 and 199, the error being such as would not have affected "the substantial rights of the adverse party."

The next point in the order adopted is the sixth ground of appeal—that the Judge erred "in refusing to charge the jury that if they believed that the bond sued on was the individual property of F. M. Trimmier, then that the plaintiff should not recover in the action." It was admitted, and in fact proved, by the evidence produced by defendants, that Trimmier was administrator, and, as such, brought the action on the bond, which was of the goods and effects of Simmons, deceased. There was no proof that the bond

was the property of Trimmier. The only proof was that he had bought the interest of the legatee, which could not be ascertained until after the payment of debts, and it was proven that no debts had yet been established.

The personal estate of the deceased vests in the administrator.— 1 Wms. on Exec., 546. "At this day the administrator represents the person of the intestate in relation to his personal estate, which vests in him immediately on the grant of letters of administration, and such grant has relation to the time of the intestate's death." It therefore makes no difference that Trimmier bought the interest of Mrs. Simmons before he took out letters. "He is to be regarded as a trustee, in whom the property of the intestate vests by operation of law, for the use of all those who may be legally entitled to the same, and who is authorized to collect and dispose of the same according to law. * * * As the legal representative of the deceased, he has the same property in the goods of the intestate as the intestate himself had when living, and the same remedies to recover them." The heirs or legatees "have no right of property or right of possession till after partition or delivery by the administrator."—*McVaughter* vs. *Elder*, 2 Brev., 307; *Johns* vs. *Johns*, 1 McC.; *Seabrook* vs. *Williams*, 3 McC., 371; *Davis* vs. *Rhame*, 1 McC. Ch., 191; *Gregory* vs. *Forester*, 1 McC. Ch., 318; *Farely* vs. *Farely*, 1 McC., 506; *Bradford* vs. *Felder*, 2 McC., 168. The administrator was, therefore, the party to bring the action, and the Judge properly instructed the jury "that the plaintiff could, as administrator, sue upon the bond."

The charge asked for by the defendants was wrong, because the point in it was not in the case, the evidence being conclusive, and the fact admitted that the plaintiff did hold the bond as administrator.

The eighth, ninth, tenth and thirteenth grounds of appeal on the part of the defendants are, whether the Judge should charge the jury that the transaction on which the contract was based was not a sale but a hire of the slaves, which were the consideration. It would have been improper had the Judge instructed the jury, as requested, "that a contract to furnish the services of a slave for a number of years is not a sale of the slave; that such a contract amounts in law to a hiring only."

There was really no such issue of fact in the case. The sole evidence upon the nature of the transaction was the statements alleged

in the bond on which the action was brought, and in the deed from
Simmons to Vernon, which was produced by the defendants.   In
reference to the legal meaning of the words therein contained, the
Judge instructed the jury " the transfer of the slaves by Simmons
to Vernon was not a hiring but a sale," and to that exception is
taken.   The words of the deed are as follows: " Have this day
sold, bargained, conveyed and made over and transferred, and do
by these presents sell, bargain, convey, make over and transfer, all
the following named negro slaves, to wit,      *      *      *      with
all their increase, that is to say, all my right, title and claim to the
said negro slaves; said right, title and claim being and during the
term of my natural life, and said negro slaves being the same here-
tofore conveyed by me to James W. Cooper, Jesse Cooper and
Thomas Cooper in several deeds, in which several deeds the life
estate, conveyed as above to said Vernon, was reserved," with the
usual warranty of title and special warranty against certain claims.
The delivery of the slaves in execution of the terms of the deed is
admitted.   There was not a tittle of other proof of hire, and the
only question was whether the words of the deed constituted a bill
of sale.   On that point the instruction given by the Judge was
proper.   It is possible, however, that the defendants meant that
Peyton Simmons was but a hirer of the slaves himself and could
convey or sell no more than what he had.

The meaning of the language in the deed is that the legal title
to the property was vested in the Coopers, to take effect at a future
day, while Peyton Simmons had in the property a life estate, which
he had reserved for himself in his deeds to the Coopers.

The character as well as the legal existence of such an estate, in
slaves, is discussed and determined in the case of *Alexander* vs.
*Burnett*, (5 Rich., 189,) and *Jaggers* vs. *Estes*, (2 Strob. Eq., 343,)
and the cases therein cited.

The estate held by Simmons had not the features of a bailment
or hire.   There is no contract by the Coopers as bailors; no price
for the hire; no reward for the use of the chattels, which is the
evidence of hiring.   A man cannot hire from himself the use of
his own chattels.   Simmons remained the possessor of a legal right
which had never passed out of him; it consisted of the possession,
use and absolute control of the property during his life, with power
to convey the whole or part of his interest.   He could have hired
the property to Vernon for a stipulated time and price, or he could

have sold his right, title and interest. The words of the deed are conclusive that he did the latter, and no proof was offered to the contrary. It was a question of legal construction, and the charge of the Judge was proper. If the title held by Simmons was not by him as bailee of the Coopers, but was the reserved right of possession and use, with which he had never parted, and of which he was the legal owner, and he sold and conveyed that right to Vernon, then Vernon occupied the position that Simmons had and cannot be said to be bailee either of Simmons or of the Coopers.

The principles in the cases of *Corley* vs. *Kleckley,* (Dud., 35,) *Bacot* vs. *Parnell,* (2 Bail., 425,) and *Ripley* vs. *Wightman,* (4 McC., 447,) therefore, are not applicable to the present case. It having been a sale of the property, the question of the effect of emancipation does not require consideration, having already been fully determined.— *Calhoun* vs. *Calhoun,* 2 S. C., 304.

The seventh and fourteenth grounds of appeal are upon the liability of Simmons's estate to the Coopers (from whom Vernon and Thomson subsequently purchased certain of the slaves) on failure to deliver the slaves at Simmons's death; and, second, whether the estate was discharged from that liability by the Act of emancipation. The Judge could not charge upon the first point as requested, for it was not consistent with the testimony in the case. The admissions and the evidence on the part of the defendants establish the fact that the slaves alluded to in this part of the defense actually were delivered long before the death of Simmons. The recital in the bond, which is part of the complaint, alleges the delivery of certain slaves by Simmons to Vernon. The defendants in their answer admit the fact, and further prove that they, Vernon and Thomson, subsequently purchased the interest of the Coopers in certain of the said slaves—being the portion referred to by the defense. It was also proved by the defendants that Thomson had an equal interest with Vernon in the slaves as purchased from Simmons. Thus they had acquired both title and possession, and rendered the delivery by Simmons's estate an impossibility, and are estopped from any such defense. By combining the titles of the Coopers and Simmons's life estate, and having possession of the seven slaves named, the defendants held a good title and emancipation is not a breach.— *Calhoun* vs. *Calhoun, supra.* It is as if Simmons had conveyed the slaves to Vernon in 1855 absolutely.

The questions in the fifth and eleventh grounds are on matters of pleading and practice. The defendants claim that they should have had the reply, and that the allegation of unsoundness in their answer, not having been denied, should have been taken as true and admitted by the plaintiff. The plaintiff was not bound to reply to Section 8 of defendants' answer alleging unsoundness of the slaves, unless it contained matter constituting a counter claim.— Code, § 176.

In the first place, if the answer contains a defense and a counter claim, "they must each be separately stated and refer to the causes of action which they are intended to answer."—§ 173.

There are defenses in answer to complaint which in themselves are cause of action, and may have been set up as counter. claims had the defendant so elected. But when such defense is set up and it is not stated that it is a counter claim, and there is no prayer for judgment on it, it will, for purposes of pleading, be regarded as a mere defense, and the plaintiff will not be forced to reply. The plea of unsoundness is more properly a defense, although it is sometimes a cause of action. A counter claim properly sets up a cause of action and prays for judgment. Paragraph 8 of the answer does not meet the requirements. It neither alleges covenant and breach, nor does it demand judgment. Whatever it does allege could have been proved under a general denial. The facts would perhaps have entitled defendant to affirmative relief, for the Code goes to a great extent to allow judgment upon the case made at the trial; but the allegations as they stand do not upon the face of the pleadings set up a counter claim. The position of the respective parties during the trial is, therefore, unaffected, nor is the plaintiff called on to reply.—Code, § 191.

The defendants in the 7th and 14th grounds, already considered, again contend to have a counter claim as assigns of the Coopers. The same rule applies. They did not set it forth in the pleadings as a counter claim, and they controvert it by admitting and proving delivery. There was nothing, therefore, either to entitle the defendants to the reply or to make it error on the part of the Judge to instruct the jury "that the emancipation of the slaves did not affect plaintiff's right of recovery in this action, and that the emancipation of the slaves relieved Peyton Simmons's estate from any liability for non-delivery of the said slaves to the Coopers or their assigns." The fact, as proved by the defense, being that they actually had been delivered, the charge on that point is immaterial.

The fourth ground of appeal on the part of defendants will be taken up in connection with points submitted by the plaintiff, who is likewise appellant upon the following grounds: First. "That a written warranty of title alone excludes the warranty of soundness usually 'implied from a sound price.'" The contrary has been determined in the case of *Wells* vs. *Spear*, (1 McC., 421,) and sustained by subsequent decisions.

Ever since the cases of *Wells* vs. *Spear* and *Hughes* vs. *Banks*, it has been held that the implied warranty of soundness is not excluded by a written contract of sale, though it be a specialty and contain a warranty of title.— *Wood* vs. *Ashe*, 3 Strob., 70. And in *Habersham* vs. *Rodrigues*, (1 Spear, 314,) the extent of the rule is defined, but its principle is confirmed. The further appeal—"that the obligors could not be released from their obligation except by deed or by parol for valuable consideration, and in the latter case the consideration must be proved,"—is closely allied to the point just considered. Upon the principle that a sound price entitles the purchaser to a sound article, a total failure of consideration is an entire discharge of the obligation and the obligor is released. The Judge, therefore, properly refused to charge as requested.— *Timrod* vs. *Shoolbred*, 1 Bay, 324; *Missroon* vs. *Waldo*, 2 N. & McC., 77; *Com.* vs. *Smith*, 9 Rich., 515; *Casten & Harden* vs. *Walker*, 2 Rich., 40.

Upon this principle of implied warranty of soundness, it is held in all the cases that evidence of the unsoundness of the property must be admitted. Therefore, "testimony as to the value of the hire of the slaves," or, in correct language of the brief, testimony "to prove the value of the hire of a lot of negroes, such as is above described," was unexceptional as a measure of the damages affected by the alleged unsoundness. In this connection comes up the defendants' fourth ground of appeal—"that the Judge erred in refusing to allow T. O. P. Vernon to testify as to the condition of the slave Beck and as to the expense incurred in providing for said slave." It was not alleged in the answer that this slave was *unsound*, and the words used indicate that the testimony was not upon unsoundness, on which point the Judge had already ruled. It is immaterial upon what use the testimony was, for on no other quality of the article than soundness is there any implied warranty, and evidence upon any other point is inadmissible.

The plaintiff further contends "that the retention of the slaves for ten years without complaint or offer to return them to vendor, and the payment of the annuities for six years, estops the vendees from pleading failure of consideration," and cites *Mitchell* vs. *DuBose,* 1 Mill., 362. The case is not similar and does not decide the point. The payment of an annuity for part of the time is only partial payment, and it will be found on examination of the authorities that the defense remains *as.* long as the right of action continues.

*Byers* vs. *Bostick,* 2 Mills, 76: "A deficiency in quantity or a defect in quality or title may now be relied upon either in abatement of the price stipulated or in rescission of the contract *in toto.*"

"It is an equitable defense, superseding the necessity of a cross action by the defendant, whose plea is that to the extent of the diminution in value by reason of the breach of warranty the contract was void *ab initio;* and, by a parity of reason, where there is a total failure of consideration, it may be shown in bar of the action. Such a defense grows out of the contract itself, which is the cause of action, and is not barred by the Statute of Limitations."—*Evans* vs. *Yongue,* 8 Rich., 113.

The implied warranty subsists along with the written contract.—*Wood* vs. *Ashe,* 3 Strob., 72.

But the case of *Parker* vs. *Pringle* (2 Strob., 242,) is to the point: "The question argued was whether the defendant could in any case avoid the payment of the whole price without a return or tender. * * * * All our cases agree that an action may be brought for breach of warranty without a tender or return, and the same rule applies when the same defense is made under our discount law. The effect is that the buyer keeps the article purchased, but he must pay for it such price as it may be worth in its unsound, defective state."

In that case partial payment had been made. It thus is clear that so long as the right of action exists the right of defense co-exists, and a tender or return is not necessary, nor is a partial payment a waiver of the right to defend.

It is further excepted to by the plaintiff that there were admitted in evidence "three notes given by plaintiff's intestate to M. C. Barnett, administrator of J. W. Cooper, as evidence of payment by said Cooper on bond of defendants." The notes were evidence of transactions between Simmons and one of the Coopers. Mrs.

White, a witness produced by the defendants, testified, without objection being made, "that money was paid by the Coopers on the bond up to the freeing of the slaves." This was not contradicted, and it may be that these notes may have been corroborative, so far as they showed dealings between the parties, and to that extent they were admissible. And there is no evidence that the jury was not properly instructed on this point, or that any request on the part of the plaintiff was refused.

It is further objected by plaintiff that the Judge refused to charge "that the agreement between T. O. P. Vernon, H. H. Thomson and the Coopers to divide between themselves the payment of the annuities on said bond was not binding on plaintiff's testator." And that he refused to charge that the writing on the margin of the bond sued on is not evidence that he released either of the obligors to said bond "from the payment of any part of said bond." It was unnecessary for the Judge to charge that an agreement between the defendant and third persons did not bind the plaintiff. That was not the question, and it would only confuse the jurors to burthen them with legal propositions not in the case. The allegation was that an agreement had been executed and that Simmons was a party to it. The existence of an agreement was proved and seems to be admitted by the plaintiff. The question is, did Simmons recognize that agreement and bind himself by its terms? It is evident that the jury decided this issue in favor of the plaintiff and that the verdict was not affected by the charge of the Judge—at least to the injury of this appellant. It is, then, only left to this Court to decide whether there has been an error at law which requires the case to go back for a new trial.

The charge by the Judge, to which exception is taken, is, in effect, the same as a refusal to charge as requested by the plaintiff. For, if the writings on the bond were evidence of a release and the terms of the release were the same as those contained in an agreement between some of the parties, then the writings on the bond might be taken as evidence that the agreement existed, was recognized and was instrumental in effecting the release. Payment or satisfaction is a release either *in toto* or *pro tanto*. If the writings on the bond were evidence of the satisfaction of the whole or of a part of the bond, then the defendants are to that extent released. And certainly anything which contains evidence, however slight, on the point in issue must go to the jury. The bond and the

writings thereon were attached to the complaint as an exhibit and constitute a part thereof and are allegations by the plaintiff. The portions of the marginal writings and endorsements in question are as follows:

" Received, 22d February, 1861, thirty-five dollars, the amount due by the estate of H. H. Thomson, deceased, from Waddy Thomson, executor, including interest from 8th June, 1860, and paid same to Peyton Simmons.

" J. D. WRIGHT, Attorney.

"April 2, 1861."

" November 3d, 1859, received of the executors of H. H. Thomson, deceased, thirty-four dollars and twenty-nine cents, their portion of the annuity above named, principal and interest, from the first day of June last.

" P. SIMMONS.

" Test:
    " R. C. CODE."

And in the handwriting of J. D. Wright, in ink, "Jesse Cooper, one-third; H. H. Thomson, portion one-half of one-third; T. O. P. Vernon, the same; James Cooper, one-third."

The figures in the receipts, allowance being made for the interest, concur with the figures of apportionment written below. These receipts may be taken as evidence of an acknowledgment on the part of Simmons that $33.33 per annum constituted full payment of the obligation he held against H. H. Thomson; and if such were established to be the fact it would operate as a release, for it would be equivalent to payment. It is immaterial, in this case, whether the payment of the balance ($166.66) was by money or by a subsequent agreement of equal rank with the first. As to the character of the alleged agreement, it was not called for or questioned, and it is now too late to object to defect of evidence on that point.—*Petigue* vs. *Sanders*, 2 Bail., 549.

Whether the receipt was for a portion paid by executors of H. H. Thomson, or for the whole amount for which Thomson's estate could be held liable, is, we think, a question which might go to the jury.

If it be an acknowledgment that $33.33 is the whole amount for which Thomson is liable, it is evidence of a release. The exception

that "there was error in refusing to charge that the obligors could not be discharged except by deed or by parol for valuable consideration, and that the consideration in such case must be proved," again comes up in this connection. The case of *Corbett* vs. *Lucas & Dotterer* (4 McC., 323,) is relied on by the appellants.

The comparatively recent case of *Hope* vs. *Johnston & Cavis* (11 Rich., 135,) confirms the decisions in previous cases, although there is a very strong dissenting opinion by Munro, J., and, were the cases similar, the Court would be bound by the authorities.

In note by the Reporter to *Hope* vs. *Johnston & Cavis* is given a circuit decree by Wardlaw, Ch., as follows: "A debt can be extinguished only by accepting a security of a higher nature, (*Mills* vs. *Starr*, 2 Bail., 360,) or by actual payment, or by a release, or by some contract equivalent to a release. Payment of money simply on a demand in money amounts merely to a payment *pro tanto*, and a receipt in full, on such partial payment, is not conclusive, and, as *nudum pactum*, "may be avoided on proof that payment in full was not actually made. Such a receipt *is a mere admission of the party*, and, like all admissions, susceptible of explanation and disproof.—*Pinnel's* case, 5 Co., 117; *Eve* vs. *Mosely*, 2 Strob., 203; *Boulware* vs. *Harrison*, 4 Rich. Eq., 317." A receipt is *prima facie* evidence of payment, being the written affirmation of the creditor.— *Dobbin* vs. *Perry*, 1 Rich., 33; *Wheeler* vs. *Alexander*, 1 Strob., 61.

In *Hope* vs. *Johnston*, and in *Eve* vs. *Mosely*, "the fact of the payment, being but partial, stands admitted before the Court;" and in the latter case it is said that, without such admission that the payment was only partial, "the receipt would have been evidence of payment of the judgment in full; and if that were contested it would have been a proper subject for an issue." In *Cumber* vs. *Wane* (1 Smith's Lead. Ca., 451,) "the preceding remarks refer to the question of the legal effect of a partial payment, alleged to have been received in full, when the proof of the payment being but partial stands admitted before the Court. But upon the question whether in point of fact the whole debt is or is not paid, it appears that the acknowledgment of the creditors that the payment is in full is not only competent evidence but is *prima facie* evidence that the whole is paid. The case of *Henderson* vs. *Moore* (5 Cranch, 11,) is a strong case to this effect." In that case the opinion by Marshall, C. J., is directly to the point: "A part of the money due on the bond might have been paid before, and such an acknowledg-

ment upon the receipt of a sum smaller than the amount of the condition of the bond was good evidence upon the plea of payment." This conclusion is entirely in accord with the *dictum* of the Court in *Eve* vs. *Mosely*, and not in conflict with the decisions, and appears to sustain the ruling of the Judge in the present case. The receipt is evidence of payment, and it is a question for the jury whether it acknowledged payment in full or in part. It is immaterial whether the payment of the balance had been by money or by release; if the receipt be a receipt in full it is *prima facie* evidence of payment, and the lack of consideration must be proved by the plaintiff.

To these questions of fact the receipts themselves and all other evidence which may explain the ambiguity of the receipts alike are pertinent and admissible.

The judgment of the Court below is affirmed and the appeals are dismissed.

*Willard*, C. J., and *McIver*, A. J., concurred.